# VERNON SEITZ v. ELSIE CLAYBOURNE AND ANOTHER.[1]

June 20, 1930.

Nos. 27,756, 27,757.

[1]Reported in 231 N. W. 714.

*Webber, George & Owen* and *Law & Gordon,* for appellant.
*Lamberton & Lamberton,* for respondent.

HILTON, J.

Defendant Claybourne in each of the cases appeals from an order denying her alternative motion for judgment non obstante or for a new trial.

A verdict was rendered against appealing defendant for $7,500 in each case. There was no material difference in the evidence at the two trials.

One action was brought to recover damages for the death of H. B. Bertelson, and the other for the death of George D. Seitz, both deaths resulting from an automobile accident. Both actions were instituted by Vernon Seitz, in one case as special administrator of the estate of Bertelson, and in the other as executor of the estate of George D. Seitz.

The accident (collision) occurred on a straight-away portion of trunk highway No. 3, which runs practically in a northwesterly and southeasterly direction. The highway consists of an 18-foot pavement with dirt shoulders three to five feet wide on each side. The center of the pavement is marked by a distinct black line. The main claim against the defendant Claybourne is that she was operating her car in a negligent manner on the wrong side of the highway.

The accident occurred about 8:30 or 9 o'clock on the evening of October 28, 1928. Defendant, (driving) with her 17-year old daughter in a Marmon coupé, was proceeding southeasterly on the pavement from Winona toward her home in Tomah, Wisconsin. Her car was followed at a distance of about 100 feet by an Erskine car driven by the codefendant Passell, who was accompanied by his wife. The deceased Seitz, with his passengers, Bertelson (deceased)

and one Carlson (severely injured), was driving his Buick car in a northwesterly direction toward Winona. The cars were apparently traveling at the rate of from 25 to 35 miles per hour, a permissible speed under ordinary conditions at the place in question. The view on the highway was unobstructed.

The Marmon and Buick cars collided, and thereafter the Buick collided with the Erskine. The Marmon proceeded after the collision until it struck a highway post southeasterly from the point of contact and at the edge of the shoulder. The Buick car, after colliding with the Erskine, came to rest partly off the shoulder northwesterly from the place of collision. The Erskine car remained on the pavement. Plats were introduced in evidence as exhibits showing the locus of the collision and positions of the cars thereafter. Numerous photographic exhibits received in evidence showed the condition of the highway and the extent of the damage to each car.

There was direct conflict in the evidence as to where on the pavement the Marmon and Buick collided. A more complete recital of the evidence, other than later appearing in the quoted memorandum of the trial court, is not necessary and would be of no avail. The evidence of Carlson is strongly attacked by the defense. The cases presented a clean-cut fact issue on each of the all important questions. The jury determined by its verdict that the defendant was negligent and to blame for the accident; that the deceased was not guilty of contributory negligence. There was sufficient evidence to sustain that determination. The trial court approved the result in each case. We should not disturb that approval. 5 Dunnell, Minn. Dig. (2 ed.) § 7157. If there were no reversible errors, the verdicts must stand. 1 Dunnell, Minn. Dig. (2 ed.) § 411.

L. 1927, p. 557, c. 409 (1 Mason, 1927, § 2684-8) provides for substituted service of process upon nonresidents, using the highways of Minnesota, to recover damages resulting from such use. Defendant was a nonresident of Minnesota using its highways. Such substituted service was made upon her. She claims the law is unconstitutional. It was held otherwise in Schilling v. Odlebak, 177 Minn. 90, 224 N. W. 694. We adhere to that holding.

■ The jurors before being sworn were examined relative to their interest in the insurance companies defending the actions. This under our procedure was proper. Eichhorn v. Lundin, 172 Minn. 591, 216 N. W. 537. Thereafter counsel is not ordinarily permitted to make mention of the insurance company or companies. There are times however when the evidence in the case necessarily and unavoidably makes mention of them.

Under the assignment in the instant case of misconduct of counsel, appellant attempts to discuss in a very general way the claim that plaintiff's counsel referred to the insurance companies both in his questions and in his argument to the jury. The claim is lacking in substance; but that aside, it is sufficient to state that no objections or exceptions were made or taken at the trial in reference to such conduct, the record was not protected, and it will not support the argument now advanced by appellant. Appellant made no specific assignments of the alleged misconduct in the notice of motion for a new trial nor in the assignments of error in this court.

■ We have carefully considered the record in each case, all the assignments of error, and the written and oral arguments. The cases were tried and argued vigorously and ably on both sides. The court handled the trials in a calm, proper, and careful manner. In the Bertelson case the court in a memorandum said:

"There is sufficient evidence to sustain the verdict. The position of the mark on the pavement, the fact that it appeared to be a fresh mark which had not been observed before the accident, the battered condition of the left front wheel on the Seitz car, the concrete still adhering to the wheel, and also the fact that the tire remained on the broken wheel of the Claybourne car and there was nothing to show that any part of that car had dragged on the pavement, were all significant circumstances from which the jury was justified in concluding that the mark was made by the Seitz car immediately after the impact. From this conclusion it follows that the Seitz car was at the extreme right-hand side of the pavement at the time of the impact, and that the Claybourne car was

over on the wrong side of the road. If this be so, the defendant Claybourne was negligent and her negligence was the proximate cause of decedent's death.

"While the evidence is by no means conclusive, it is much stronger than mere conjecture. The weight of the evidence was for the jury. The credibility of the witness Carlson was also for the jury."

The views of the trial court thus expressed are well supported by the evidence. The same is true as to the Seitz case.

The jury having resolved the fact issues that were properly submitted to it in favor of plaintiff, the trial court having approved that action, and there being no reversible errors, the orders are affirmed.

Affirmed.

